UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANTE JACKSON,

Plaintiff,

-against-

CITY OF WHITE PLAINS, PAUL VIVIANO, JOSEPH CASTELLI, JOHN BRADY AND JONATHAN MOODY,

Defendants.

No. 05-cv-0491 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Dante Jackson asserts claims pursuant to 42 U.S.C. § 1983 against the City of White Plains (the "City") and a number of its police officers (the "Officer Defendants" or "Defendants") for false arrest, use of excessive force, supervisory liability, and failure to intervene, in connection with his arrest on January 22, 2003. By Declaration on August 12, 2014, Plaintiff withdrew his fourth and fifth claims in the Second Amended Complaint ("SAC") with prejudice. (Docket No. 199; *see* SAC ¶¶ 52-63) (claims for municipal liability against the City and supervisory liability against Defendant Castelli.)

The City and the Officer Defendants now separately move for summary judgment. In light of the voluntary dismissal of all claims against the City, the City's motion is moot. For the following reasons, the Officer Defendants' partial motion for summary judgment is GRANTED in part and DENIED in part.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/7/2015

**BACKGROUND**

Plaintiff was arrested on January 22, 2003 for criminal trespass in the Winbrook Public Housing Project, located at 135 South Lexington Avenue in White Plains, New York. (Plaintiff's Statement Pursuant to Local Rule 56.1 in Response and Opposition to Officer Defendants' Motion for Summary Judgment ("Pl.'s 56.1") ¶¶ 5, 8, 23.) It is largely undisputed that two police officers observed two men potentially trespassing in the 135 South Lexington Avenue building while conducting plain-clothes observation for criminal activity in the Winbrook Housing Complex, a known high-crime area. (Officer Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Def.'s 56.1") ¶¶ 9-12; Pl.'s 56.1 ¶¶ 9-12.) Signs were posted at the housing complex prohibiting trespassing. (Pl.'s 56.1 ¶ 11.) The officers contacted their supervisor, who instructed four officers, including Officer John Brady, to check on the potential trespassers. (*Id.* ¶¶ 13-15.) Upon arriving at the building, Brady and his partner approached two men who purportedly matched the descriptions provided by the two plain-clothes officers, one of whom was Plaintiff. (*Id.* ¶ 15.) Plaintiff then consented to a search of his person. (*Id.* ¶ 17.)

At this point, Plaintiff's and Defendants' recollection of what occurred next differs considerably. Defendants assert that Plaintiff did not provide the officers with any government-issued identification indicating that his address was 135 South Lexington Avenue. (Def.'s 56.1 ¶ 18.) Sergeant Filardi, who arrived on the scene after the initial group of officers, then went up to the apartment in which Plaintiff stated he was living. (*Id.* ¶¶ 19-20.) Filardi questioned the woman living in the apartment, who responded that Plaintiff did not live there and was not visiting. (*Id.* ¶ 21.) Filardi informed the other officers of his findings and Plaintiff was subsequently arrested and charged with criminal trespass. (*Id.* ¶¶ 22-23.)

Plaintiff, on the other hand, states that during his encounter with the officers he was in possession of his government-issued social security card and birth certificate, as well as papers from the White Plains Hospital listing his address as 135 South Lexington Avenue. (Pl.'s 56.1 ¶ 18.) Plaintiff then explained to Filardi that he lived in the building and had paperwork confirming as much. (*Id.* ¶ 20.) Plaintiff asked Brady, Filardi, and other officers to speak with his cousin, with whom he was purportedly living, to confirm his residency in the building. (*Id.*) The officers ignored Plaintiff's request, arrested him, and transported him to the White Plains Police Department headquarters. (*Id.*) Plaintiff specifically notes that Filardi never left the lobby of the building. (*Id.* ¶¶ 20-22.)

Upon arriving at police headquarters, the parties' stories briefly converge. Plaintiff was brought into the stationhouse and handcuffed to a bar while Officer Paul Viviano processed another arrestee. (*Id.* ¶¶ 27-29.) After Viviano finished processing the other arrestee, he completed Plaintiff's booking entries and then removed Plaintiff's handcuffs to take him to the fingerprinting area. (*Id.* ¶¶ 29-30.) At this point, Viviano asked Plaintiff to remove a rubber band that was around his wrist, and the parties' stories once again diverge. (*Id.* ¶ 31.)

Defendants assert that Plaintiff threw the rubber band on the floor, refused to pick it up at Viviano's request, and became belligerent and swore at Viviano. (Def.'s 56.1 ¶¶ 32-34.) Plaintiff then proceeded to walk away from Viviano, uncuffed, towards an exit. (*Id.* ¶¶ 35-36.) Viviano attempted to stop Plaintiff from exiting the building and Plaintiff punched him in the face. (*Id.* ¶ 37-38.) Viviano then placed Plaintiff in a "bear hug" and the two men fell to the floor, at which time a number of other officers responded to assist Viviano. (*Id.* ¶¶ 39-42.) During the scuffle, Plaintiff kicked Brady in the hand, injuring him. (*Id.* ¶ 43.) Viviano also sprained his hand in the scuffle. (*Id.* ¶ 44.) Plaintiff was then escorted to a holding cell, after

which he complained of pain in his jaw and was transported to the hospital for treatment. (*Id.* ¶¶ 45-51.) Plaintiff's intake forms at the Westchester Medical Center stated that his address was 64 Jefferson Avenue, White Plains, New York. (*Id.* ¶52.)

Plaintiff's version of the events is markedly different. Plaintiff contends that after being asked to remove the rubber band from his wrist, it "flew unintentionally to the ground." (Pl.'s 56.1 ¶ 32.) After Viviano asked him to pick up the rubber band, Plaintiff "knew from the defendant's tone and demeanor that this 'is about no rubberband[,]'" and while swearing at Viviano told him to pick it up himself. (*Id.* ¶ 33.) Plaintiff then walked towards the fingerprinting area to complete his processing, not towards an exit. (*Id.* ¶ 36.) Viviano proceeded to grab Plaintiff's shoulder, spin him around, and place him in a "bear hug," after which both men fell to the floor. (*Id.* ¶¶ 37, 39.) Plaintiff did not punch Viviano in the face, and during the fall neither Plaintiff's head nor his face hit the floor. (*Id.* ¶¶ 38, 39.) Plaintiff does not dispute that a scuffle ensued or that Viviano's hand was injured during the scuffle, but denies kicking Brady. (*Id.* ¶¶ 40-44.) As Plaintiff was being escorted to a holding cell, Viviano approached him from behind and punched him in the face, stated "Remember me, motherfucker," and then punched him again.[1] (*Id.* ¶ 46.) Plaintiff was then placed in a holding cell until he complained of pain in his jaw and was transported to the hospital for treatment. (*Id.* ¶¶ 46-51.) Although Plaintiff does not dispute that his hospital intake forms list his address as 64 Jefferson Avenue, he contends that the information is incorrect and that he did not provide that address to medical staff at the hospital. (*Id.* ¶ 52.)

[1] Defendants point out that Plaintiff's description of the assault varied across his testimony. (Def.'s Mot. at 4.) Plaintiff's Notice of Claim, (Def.'s 56.1, Ex. A), and 50H-Hearing testimony, (*Id.*, Ex. X at 50:8-10, 57:10-58:8), appear to describe only one punch occurring during the alleged assault. Further, Plaintiff does not mention any offensive statements made by Viviano, but instead merely asserts that he said "yeah" after punching him. (*Id.*, 58:12-13.)

After being charged with second-degree assault for punching Viviano, Plaintiff ultimately pleaded guilty to the reduced charge of third-degree assault. During his plea allocution, Plaintiff testified under oath that "with the intention of causing physical injury to [Viviano] . . . [Plaintiff] did cause such injury to him by striking him[.]" (Pl.'s 56.1 ¶¶ 54-55.) Plaintiff disputes, however, that he stated during his allocution that he struck Viviano in the head, and, in any event, thought he allocuted to striking Brady, not Viviano. (*Id.* ¶ 55.)

**STANDARD ON A MOTION FOR SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal

quotation marks omitted). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Moreover, "[a non-moving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Fincher v. Depository Trust & Clearing Corp.*, No. 06 Cv. 9959 (WHP), 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) aff'd, 604 F.3d 712 (2d Cir. 2010) (citing *Gonzales v. Beth Israel Med. Ctr.*, 262 F. Supp. 2d 342, 353 (S.D.N.Y. 2003)).

## DISCUSSION

### I. The Fourth Amendment Governs Plaintiff's Excessive Force Claim

Plaintiff asserts an excessive force claim against the Defendants arising under the Fourth and Fourteenth Amendments. (SAC at 8, ¶¶ 43-45.) Defendants argue that excessive force claims brought by pretrial detainees are properly analyzed under a Fourteenth Amendment

standard, which requires a plaintiff to prove: "(1) an objective element—that the force used was objectively serious, and (2) a subjective element—that the defendant acted with a sufficiently culpable state of mind." (Def.'s Mot. at 7) (citing *United States v. Walsh*, 194 F.3d 37, 48 (2d Cir. 1999).) Plaintiff counters that he was an arrestee, not a pretrial detainee, at the time of the alleged use of excessive force, and is only required to satisfy the Fourth Amendment's objective standard – "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Defendants do not seek to dismiss Plaintiff's claim in its entirety and have conceded that there are factual issues present that should be determined by a jury. Defendants only argue that the applicable standard should be one governed solely by the provisions of the Fourteenth Amendment.

Following the parties' filing of their motion papers, the Supreme Court held in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), that pretrial detainee suits for excessive force arising under the Fourteenth Amendment are properly analyzed using an objective, not subjective, standard. Specifically, the Supreme Court held "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473; *accord Roberts v. C-73 Med. Dir.*, No. 14 Cv. 5198 (GHW), 2015 WL 4253796, at *3 n.3 (S.D.N.Y. July 13, 2015). Accordingly, whether or not the Court applies the Fourteenth Amendment standard, as Defendants request, or the Fourth Amendment standard, as Plaintiff requests, the outcome is now the same – Plaintiff's claim is to be analyzed using an objectively reasonable standard, without regard to the subjective intent of the Defendants.

In any event, Plaintiff's claim is governed by the Fourth Amendment. Although the Supreme Court in *Graham* declined to decide "whether the Fourth Amendment continues to

provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins," *Graham*, 490 U.S. at 395 n.10, the Second Circuit has noted that "the Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer." *Powell v. Gardner*, 891 F.2d 1039, 1044 (2d Cir. 1989).

Here, the excessive force allegedly used by Viviano occurred after Plaintiff's booking at police headquarters, but before Plaintiff was placed in a holding cell, arraigned, or otherwise formally charged. Indeed, "Plaintiff's claim[] arose precisely during the timeframe contemplated by the Second Circuit in *Powell*[,]" *Lewis v. Clarkstown Police Dep't*, No. 11 Cv. 2487 (ER), 2014 WL 6883468, at *4 (S.D.N.Y. Dec. 8, 2014), and the Fourth Amendment governs such a claim. Although Defendants cite to three cases in this District that applied a Fourteenth Amendment standard to individuals in custody at a police station, those cases seemingly ignore the Second Circuit's instruction in *Powell*. (*See* Def.'s Mot. at 8) (citing *Lindsey v. Butler*, No. 11 Cv. 9102 (RWS), 2013 WL 3186488, at *3 n.5 (S.D.N.Y. June 24, 2013); *Coleman v. City of New York*, No. 07 Cv. 1051 (CM), 2010 WL 571986, at *4 (S.D.N.Y. Feb. 2, 2010); *Barratt v. Joie*, No. 96 Cv. 0324 (LTS)(THK), 2002 WL 335014, at *8 (S.D.N.Y. Mar. 4, 2002).) Instead, the Court agrees with other courts in this Circuit that a plaintiff's claim of excessive force is more appropriately analyzed under the Fourth Amendment "at least until plaintiff's pretrial custody status is ordered by a judicial officer, as upon arraignment either resulting in an order of pretrial regulatory detention or the setting of bail conditions not yet met." *Freece v. Young*, 756 F. Supp. 699, 703 (W.D.N.Y. 1991). *See also Castellar v. Caporale*, No. 04 Cv. 3402, 2010 WL 3522814, at *6 (E.D.N.Y. Sept. 2, 2010); *Thompson v. City of Meriden*, No. 3:94 Cv. 1950

(EBB), 1999 WL 301693, at *6 (D. Conn. Apr. 14, 1999); *Blake v. Base*, No. 90 Cv. 0008, 1998 WL 642621, at *11 (N.D.N.Y. Sept. 14, 1998).

## II. The Officers Had Probable Cause To Arrest Plaintiff

Plaintiff was arrested for criminal trespass in the third degree for allegedly trespassing in a public housing project. (Pl.'s 56.1 ¶¶ 5, 24; SAC ¶ 12.) "A person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in a building or upon real property . . . where the building is used as a public housing project in violation of conspicuously posted rules or regulations governing entry and use thereof." N.Y. Penal Law § 140.10(e). Plaintiff claims that Officer Brady violated 42 U.S.C. § 1983 when he arrested Plaintiff without probable cause in violation of the Fourth Amendment. Defendants argue that the arrest was made with probable cause, which provides a complete defense to Plaintiff's § 1983 false arrest claim. *See Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012), *as amended* (Dec. 4, 2012) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

"Probable cause requires an officer to have 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)). "Probable cause does not require absolute certainty[,]" *Boyd*, 336 F.3d at 76, and "[c]ourts should look to the 'totality of the circumstances' and 'must be aware that probable cause is a fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules.'" *Panetta*, 460 F.3d at 395 (quoting *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)). Moreover, a probable cause determination is "to be made on the basis of the collective knowledge of the police, rather than on that of the arresting officer alone." *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 127 (2d Cir. 2009). *See also*

*Panetta*, 460 F.3d at 395 ("When making a probable cause determination, police officers are entitled to rely on the allegations of fellow police officers.") (internal citation and quotation marks omitted). Courts in this District and in the State of New York have found probable cause to arrest an individual for trespassing in a public housing project when police confirm with a resident of the building that the suspected trespasser does not live there. *See Davis v. City of New York*, 902 F. Supp. 2d 405, 413-14 (S.D.N.Y. 2012) (finding probable cause to arrest when an individual was stopped in the lobby of the building, stated that he had been visiting a specific apartment, and the police checked with the occupant of that apartment who stated the individual had not been there); *People v. Lozado*, 90 A.D.3d 582, 583 (1st Dep't 2011) (finding probable cause to arrest when, among other things, defendant told officers he was returning a jacket to a friend, but when officers visited his purported friend's apartment the "occupant refused to open the door, denied that the person defendant was looking for was there, and denied knowing defendant.")

Defendants assert that Plaintiff's arrest was based on the following information: Plaintiff was standing in the lobby of the building in the middle of the night for no apparent reason (Def.'s Mot. at 11, Def.'s 56.1 ¶ 12, Ex. K); the building was in a known high-crime area with posted no trespassing signs, (Def.'s Mot. at 11; Def.'s 56.1 ¶¶ 10-11); Plaintiff could not provide any government-issued identification indicating that he lived in the building, (Def.'s Mot. at 11; Def.'s 56.1 ¶ 18); and Sergeant Filardi was told by Plaintiff's cousin, the occupant of the apartment in which Plaintiff claimed he lived, that Plaintiff was neither a resident nor a visitor of that apartment. (Def.'s Mot. at 11; Def.'s 56.1 ¶ 21.) On the contrary, Plaintiff essentially contends that everyone is lying – the officers lied that he did not produce identification proving that he lived in the building, (Pl.'s Opp. at 8; Pl.'s 56.1 ¶ 18); Sergeant Filardi lied about

speaking with Plaintiff's cousin, (Pl.'s Opp. at 8; Pl.'s 56.1 ¶¶ 20-21); and Plaintiff's cousin lied in her notarized statement when she asserted that Plaintiff never lived in her apartment. (Pl.'s Opp. at 8-9.)

With the exception of Plaintiff's discharge papers from the White Plains Hospital Center listing his address as 135 South Lexington Avenue, (Pl.'s 56.1, Ex. 5), Plaintiff has offered no evidence apart from his own deposition testimony to contradict the officers' and his cousin's statements. Though Plaintiff relies heavily on his hospital discharge papers as evidence of his residence in the building, Plaintiff's argument is belied by his own motion papers. Not only has Plaintiff failed to proffer evidence that his address was in any way verified by the hospital, but he implicitly admits that hospitals do not verify patients' addresses, as he argues that his intake papers at the Westchester Medical Center mere hours after his arrest listed an incorrect address of 64 Jefferson Avenue as his residence. (Pl.'s Mot. at 8; Pl.'s 56.1 ¶ 52.) Plaintiff's contention that he possessed his birth certificate and social security card at the time of his arrest is equally unavailing – Plaintiff does not assert that those documents listed his address as 135 South Lexington Avenue, and, in any event, the documents have not been provided to the Court in support of Plaintiff's opposition to the instant motion. Plaintiff's self-serving statements, absent any supporting direct or circumstantial evidence, are insufficient to defeat Defendants' motion for summary judgment. *Fincher*, 2008 WL 4308126 at *3.

Defendants verified that Plaintiff was neither a resident nor a visitor of the building before Officer Brady placed Plaintiff under arrest for criminal trespass. Plaintiff could not provide any evidence of his lawful presence in the building at the time of his arrest and has not done so in opposition to the instant motion. Accordingly, the Court finds that Defendants had probable cause to arrest Plaintiff.

Having determined that probable cause existed for Plaintiff's arrest, the Court need not reach the question of whether Officer Brady is entitled to qualified immunity. Nevertheless, the existence of probable cause would entitle him to qualified immunity in this case. *See Pugach v. Ventrella*, 152 F.3d 920 (2d Cir. 1998) (court properly dismissed § 1983 claims against officer on qualified immunity grounds where probable cause existed for arrest).

**III. Plaintiff's Failure To Intervene Claim Fails As A Matter Of Law**

Finally, Plaintiff asserts a claim against Defendants Castelli, Brady, and Moody for their failure to intervene to prevent or end: (1) Plaintiff's allegedly unlawful arrest, and (2) the excessive force to which Plaintiff was allegedly subjected while at police headquarters.

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). For an officer to be held liable, he or she must have had a realistic opportunity to intervene to prevent the violation from happening. *Id.* (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)); *accord Russo v. DeMilia*, 894 F. Supp. 2d 391, 414 (S.D.N.Y. 2012). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson*, 17 F.3d at 557. The Second Circuit has held that in instances where excessive force was used in a rapid, sudden fashion, there is no realistic opportunity to attempt to prevent the force. *O'Neill*, 839 F.2d at 11 (finding three blows struck in rapid succession did not provide others a reasonable opportunity to intervene).

Further, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite for an award of damages under § 1983.'" *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d

496, 501 (2d Cir. 1994)). With respect to a claim of failure to intervene, "[a] police officer is personally involved in the use of excessive force if he . . . was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Russo v. DeMilia*, 894 F. Supp. 2d 391, 414 (S.D.N.Y. 2012) (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003)). Where the officer is a direct participant in the allegedly unlawful conduct, the failure to intervene theory of liability is inapplicable. *Simon v. City of New York*, No. 09 Cv. 1302 (ENV)(RER), 2011 WL 317975, at *12 (E.D.N.Y. Jan. 3, 2011) (dismissing Plaintiff's claim as futile for failure to intervene "because these same officers actually arrested her.") (citing *Morgan v. County of Nassau*, No. 09 Cv. 4168 (ADS)(AKT), 2010 WL 2634125, at *9 (E.D.N.Y. July 1, 2010)) *report and recommendation adopted*, No. 09 Cv. 1302 (ENV)(RER), 2011 WL 344757 (E.D.N.Y. Feb. 1, 2011).

Plaintiff's claim for the officers' alleged failure to intervene fails as a matter of law. First, Brady was the arresting officer. (SAC ¶ 21.) As such, any claim against Brady, a direct participant in the allegedly unlawful arrest, must fail. Second, Castelli and Moody did not have any personal involvement in Plaintiff's arrest. Plaintiff concedes as much in his opposition to the instant motion. (*See* Pl.'s 56.1 ¶¶ 13-15) (identifying Officers Demonda, Ferguson, Filardi, Brady, Napolitani, Martin, and Diaz as those present at the building before and during the arrest.) It was not until Plaintiff was transported to police headquarters and a scuffle ensued that Castelli and Moody interacted with Plaintiff. (*Id.* ¶¶ 40-42.) Without any personal involvement in the arrest, Plaintiff's claim against Castelli and Moody also fails.

Likewise, Plaintiff's failure to intervene claim arising out of the scuffle at police headquarters also fails. First, Plaintiff did not oppose Defendants' motion for summary judgment for Brady and Castelli on the failure to intervene claim. (Pl.'s Opp. at 16.) Thus,

Plaintiff has abandoned these claims. *Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (collecting cases). In any event, neither Brady nor Castelli were personally involved in the alleged use of excessive force. Plaintiff has conceded that Brady was "on the floor holding his hand" following the scuffle and did not escort him to the holding cell. (Pl.'s 56.1 ¶ 45.) Nor is it clear that Castelli was one of the officers who escorted Plaintiff to the holding cell. (Pl.'s Opp. at 16; Pl.'s 56.1 ¶ 46.) Again, without any personal involvement in the alleged use of excessive force, Plaintiff's claim against Brady and Castelli must fail.

Second, even as to Moody, whom Plaintiff asserts transported him to the holding cell, Plaintiff's failure to intervene claim fails. Plaintiff asserts that Viviano "snuck up" on him and punched him twice in the face in quick succession. (Pl.'s 56.1 ¶ 46.) Viewing the facts in the light most favorable to Plaintiff, at best the use of force was unexpected and lasted no more than a few seconds – Viviano punched him, spoke one short sentence, and punched him again. Because of the brief nature of the encounter, there was no realistic opportunity for Moody, or any other officer for that matter, to intervene to prevent or stop the alleged use of force. *O'Neill*, 839 F.2d at 11. *See also Alvarez v. City of New York*, No. 11 Cv. 5464 (AT), 2015 WL 1499161, at *9 (S.D.N.Y. Mar. 30, 2015); *Figueroa v. Mazza*, 59 F. Supp. 3d 481, 492 (E.D.N.Y. 2014).

## CONCLUSION

For the foregoing reasons, the Officer Defendants' partial motion for summary judgment is GRANTED in part and DENIED in part. Plaintiff's second and third claims are dismissed in accordance with this Opinion. At Plaintiff's request, Plaintiff's fourth and fifth claims are dismissed with prejudice. The Officer Defendants did not seek summary judgment on Plaintiff's first claim and it therefore survives. The Court respectfully directs the Clerk to terminate the motions at ECF Nos. 186 and 189 and to update the caption to reflect that all defendants with the exception of Paul Viviano are hereby dismissed from this action. The parties are directed to appear for an in-person pretrial conference at 11:30 a.m. on October 1, 2015.

Dated: August 7, 2015
White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge